UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| LISA M. PORTER, <br><br> Plaintiff, <br><br> v. <br><br> MICHAEL J. ASTRUE, <br> Commissioner of Social Security, <br><br> Defendant. | No. 11-CV-149-JPH <br><br> ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS PURSUANT TO SENTENCE FOUR 42 U.S.C. § 405(g) |

BEFORE THE COURT are cross-Motions for Summary Judgment. (Ct. Rec.14, 17.) Attorney Maureen J. Rosette represents plaintiff; Special Assistant United States Attorney Stephanie Lynn F. Kiley represents defendant. The parties have consented to proceed before a magistrate judge. (Ct. Rec. 8.) After reviewing the administrative record and briefs filed by the parties, the court **GRANTS** plaintiff's Motion for Summary Judgment and **DENIES** defendant's Motion for Summary Judgment.

**JURISDICTION**

Plaintiff Lisa M. Porter (plaintiff) protectively filed an application for supplemental security income (SSI) on September 13, 2008. (Tr. 147, 200.) Plaintiff alleged an onset date of May 1, 2007. (Tr. 147.) Benefits were denied initially and on reconsideration. (Tr. 94, 98.) Plaintiff requested a hearing before an administrative law judge (ALJ), which was held before ALJ Gene Duncan on October 7, 2009. (Tr. 33-85.) Plaintiff was represented by counsel and testified at the hearing. (Tr.37-50, 62-72, 75-76.) Medical expert Dr. Marion Martin and vocational expert Holly Peterson also testified. (Tr. 51-62, 70-84.) The ALJ denied benefits (Tr. 13-24.) and the Appeals Council denied review. (Tr. 1.) The matter is now

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT -1

before this court pursuant to 42 U.S.C. § 405(g).

**STATEMENT OF FACTS**

The facts of the case are set forth in the administrative hearing transcripts, the ALJ's decision, and the briefs of plaintiff and the Commissioner, and will therefore only be summarized here.

Plaintiff was born on March 24, 1952 (Tr. 55) and was 57 years old at the time of the hearing. She went to school through the tenth grade and later obtained her GED. (Tr. 38.) She last worked in 2007 at as a customer service agent at a call center. (Tr. 39, 72.) She left that job because she was ill from back pain, she kept catching colds and her asthma was acting up. (Tr. 40.) She is not sure about the cause of her back pain, but it could be from being overweight. (Tr. 40.) She testified she would not longer be able to work her last job in a call center because she cannot sit in chairs for any length of time. (Tr. 41.) Her back and hips have gotten so bad that she has to stretch a lot. (Tr. 41.) She cannot stay still for long periods of time. (Tr. 41.) She testified she has been treated with muscle relaxers, pain pills, and anti-inflammatories, but nothing really works. (Tr. 41.) She has pain all the time in her lower back, hip and shoulders. (Tr. 42-43.) She has had injections in her back. (Tr. 42-43.) Asthma prevents her from walking very far and climbing up and down stairs. (Tr. 44.) She uses inhalers. (Tr. 44.) Stress, allergies, hay fever, and cats precipitate her breathing problems. (Tr. 45-46.) She has pain in her wrists and knees and her shoulders are tight and sore. (Tr. 48, 67-68.) She gets migraines twice a month. (Tr. 69.) She also has depression and anxiety. (Tr. 49.) She gets panic attacks, has a hard time being around other people, and cries frequently. (Tr. 50.)

**STANDARD OF REVIEW**

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A Court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler,* 760 F. 2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F. 3d 1094, 1097 (9th Cir. 1999). "The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan,* 888 F.2d 599, 601-

602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services,* 846 F.2d 573, 576 (9th Cir. 1988). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze,* 348 F.2d 289, 293 (9th Cir. 1965). On review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989) (*quoting Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Sec'y of Health and Human Services,* 839 F.2d 432, 433 (9th Cir. 1988). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

**SEQUENTIAL PROCESS**

The Social Security Act (the "Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423 (d)(1)(A), 1382c (a)(3)(A). The Act also provides that a plaintiff shall be determined to be under a disability only if his impairments are of such severity that plaintiff is not only unable to do his previous work but cannot, considering plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if he or she is

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT -3

engaged in substantial gainful activities. If the claimant is engaged in substantial gainful activities, benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I).

If the claimant is not engaged in substantial gainful activities, the decision maker proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.

If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); 20 C.F.R. § 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.

If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from performing work he or she has performed in the past. If plaintiff is able to perform his or her previous work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, the claimant's residual functional capacity ("RFC") assessment is considered.

If the claimant cannot perform this work, the fifth and final step in the process determines whether the claimant is able to perform other work in the national economy in view of his or her residual functional capacity and age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon the claimant to establish a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once the claimant establishes that a physical or mental impairment prevents him from engaging in his or her previous occupation. The burden then shifts, at step five, to the Commissioner to show that (1) the claimant can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" which the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT -4

**ALJ'S FINDINGS**

At step one of the sequential evaluation process, the ALJ found plaintiff has not engaged in substantial gainful activity since September 13, 2007, the application date. (Tr. 15.) At step two, the ALJ found plaintiff has the following severe impairments: asthma, morbid obesity and social phobia. (Tr. 15.) At step three, the ALJ found plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. (Tr. 416) The ALJ then determined:

> [T]he claimant has the residual functional capacity to perform light work[] as defined in 20 CFR 404.967(b) except that she is limited to simple, routine work and can only stand and walk for 4 hours out of an eight hour work day. She must also have a sit/stand option. The claimant may not climb stairs or be exposed to machinery and heights. She is unable to drive a motor vehicle and should avoid concentrated exposure to dusts, odors, fumes and gases. She can only have superficial contact with coworkers and the general public. The claimant will occasionally be distracted by coworkers and should not work in crowds or with large groups of people. She may have no intense interaction with others or prolonged reading for content or comprehension. She walks at a below average pace and can have few changes in the work setting. She should not be exposed to excessively noisy environments and will be absent one day a month for medical issues.

(Tr. 17.) At step four, the ALJ determined plaintiff has no past relevant work. (Tr. 22.) After considering plaintiff's age, education, work experience, residual functional capacity and the testimony of a vocational expert, the ALJ determined there are jobs that exist in significant numbers in the national economy that the plaintiff can perform. (Tr. 23.) Thus, the ALJ concluded plaintiff has not been under a disability as defined in the Social Security Act since September 13, 2007, the date the application was filed. (Tr. 24.)

**ISSUES**

The question is whether the ALJ's decision is supported by substantial evidence and free of legal error. Specifically, plaintiff asserts: (1) the ALJ did not include all of the psychological limitations supported by the record in the hypothetical to the vocational expert; (2) the ALJ did not properly consider the medical and psychological opinion evidence; and (3) the ALJ did not properly consider her testimony. (ECF No. 15 at 11-17.). Defendant argues the ALJ: (1) reasonably determined plaintiff's RFC; (2) reasonably gave weight to medical source opinions; and (3) did not err in finding plaintiff not credible. (ECF No. 18 at 6-19.)

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT -5

**DISCUSSION**

**1.      Credibility**

Plaintiff argues the ALJ did not properly consider her testimony. (ECF No. 15 at12.) However, plaintiff fails to develop or otherwise mention this argument elsewhere in her brief. (ECF No. 15, 20.) The court will not address the credibility finding in detail because plaintiff failed to argue this issue with any specificity in briefing. *See Carmickle v. Commissioner, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008). However, the court notes the credibility finding is properly supported with clear and convincing reasons and specific citations to the record. *See Lingenfelter v. Astrue,* 504 F.3d 1028, 1036 (9th Cir. 2007); *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001); *Morgan v. Apfel*, 169 F.3d 595, 601-02 (9th Cir. 1999); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). The ALJ noted significant inconsistencies between plaintiff's testimony and evidence in the record and found those discrepancies diminish the persuasiveness of plaintiff's subjective complaints and alleged limitations. *See Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (ALJ may rely on ordinary techniques of credibility evaluation in making the credibility determination). (Tr. 19-20.) As a result, the ALJ's credibility finding is legally sufficient and there is no error.

**2.      Opinion Evidence**

Plaintiff argues the ALJ did not properly consider nor reject the opinions of treating and examining sources. (ECF No. 15 at 12, 15-17.) In disability proceedings, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion is given more weight than that of a non-examining physician. *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If the treating or examining physician's opinions are not contradicted, they can be rejected only with clear and convincing reasons. *Lester*, 81 F.3d at 830. If contradicted, the opinion can only be rejected for "specific" and "legitimate" reasons that are supported by substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995). Historically, the courts have recognized conflicting medical evidence, the absence of regular medical treatment during the alleged period of disability, and the lack of medical support for doctors' reports based substantially on a claimant's subjective complaints of pain as specific, legitimate reasons for disregarding a treating or examining physician's opinion. *Flaten v. Secretary of Health and Human*

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT -6

*Servs.*, 44 F.3d 1453, 1463-64 (9th Cir. 1995); *Fair*, 885 F.2d at 604.

    **a.    Dr. Emery**

Plaintiff argues the ALJ did not provide clear and convincing reasons for rejecting Dr. Emery's opinion. (ECF No. 15 at 17.) Dr. Emery began treating plaintiff in January 2007. (Tr. 337.) In September 2007, he completed a DSHS Documentation Request for Medical/Disability Condition form. (Tr. 343-44.) Dr. Emery diagnosed asthma, chronic major depression, obesity, chronic low back pain and chronic right knee pain. (Tr. 343.) He indicated plaintiff had a number of limitations and opined she was limited to sedentary work. (Tr. 343.) In January 2008, Dr. Emery completed a second DSHS form. (Tr. 417-18.) He listed asthma, lumbago and depression as the only diagnoses. (Tr. 417.) He opined plaintiff could spend 1-10 hours per week working and she should be limited to light work. (Tr. 417.) He also indicated plaintiff's condition is a permanent condition. (Tr. 418.)

Plaintiff asserts clear and convincing reasons are required in rejecting Dr. Emery's opinion because, "No other doctor had opined as to Ms. Porter's ability or inability to work." (ECF No. 15 at 17.) If a treating or examining physician's opinions are not contradicted, they can be rejected only with clear and convincing reasons. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). However, if contradicted, the ALJ may reject the opinion if he states specific, legitimate reasons that are supported by substantial evidence. *See Flaten*, 44 F.3d at 1463 (citing *Magallanes v. Bowen*, 881 F.2d 747, 753 (9th Cir. 1989); *Fair*, 885 F.2d at 605. Reviewing physicians Dr. Wolfe and Dr. Staley offered opinions regarding plaintiff's ability to work and concluded she is capable of light work with postural and environmental limitations. (Tr. 348-55, 437.) Because the opinions of Drs. Wolfe and Staley conflict with Dr. Emery's opinion that plaintiff should not work more than 1-10 hours per week at light work and his opinion that plaintiff was limited to sedentary work, the ALJ is required to supply specific, legitimate reasons for rejecting Dr. Emery's opinion rather than clear and convincing reasons.

The ALJ considered Dr. Emery's opinions but gave little weight to the opinions despite Dr. Emery's status as a treating provider for two reasons. (Tr. 21-22.) First, the ALJ determined Dr. Emery's opinion of plaintiff's work related abilities is without substantial support from other evidence of record. (Tr. 22.) An ALJ may discredit treating physicians' opinions that are unsupported by the record as a whole or by objective medical findings. *Batson v. Comm'r, Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT -7

2004). Dr. Wolfe indicated plaintiff's alleged limitations were mostly concerned with her asthma condition and pointed out plaintiff was capable of preparing easy meals, caring for children, doing household chores, laundry, cleaning bathrooms, riding in cars, using public transportation and grocery shopping with her aunt. (Tr. 21,355.) Dr. Wolfe limited plaintiff to light work to account for her obesity. (Tr. 355.) Dr. Elmer, a pulmonologist, diagnosed asthma and allergies and opined plaintiff's asthma was "well controlled" and she was "doing pretty well" on medication. (Tr. 20, 438-39.) Dr. Staley considered Dr. Elmer's findings and concluded a limitation to light work was still appropriate. (Tr. 437.) The ALJ reasonably concluded the evidence does not support Dr. Emery's opinion that plaintiff cannot work. This is a specific, legitimate reason supported by substantial evidence for rejecting Dr. Emery's opinion.

Second, the ALJ concluded Dr. Emery's opinion that plaintiff is unable to participate in gainful employment is inconsistent with his own treatment records. A physician's opinion may be rejected if it contains inconsistencies or is unsupported by the physician's treatment notes. *See Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009); *Connett v. Barnhart*, 340 F.3d 871, 875 (9th Cir. 2003) (affirming ALJ's rejection of physician's opinion as unsupported by physician's treatment notes). Plaintiff asserts the ALJ "made a boilerplate statement that Dr. Emery's opinion was inconsistent with his own treatment records, but did not specify which treatment records he was referring to." (ECF No. 15 at 17.) To the contrary, the ALJ pointed out that in February 2008, just one month after Dr. Emery opined plaintiff is unable to work, plaintiff reported she "really doesn't have any concerns right now" and that everything was going well during an appointment to follow up regarding high blood pressure and asthma. (Tr. 22, 400.) Further, the ALJ noted Dr. Emery's DSHS form opinions are inconsistent with each other, since he opined plaintiff was capable of both light and sedentary work in a period of less than three months. (Tr. 22.) Where a treating physician's opinion is itself inconsistent, it should be accorded less deference. *Johnson v. Chater*, 87 F.3d 1015, 1018 (9th Cir.1996). These inconsistencies were reasonably considered by the ALJ in rejecting Dr. Emery's opinion and constitute substantial evidence supporting the ALJ's reasoning. Therefore, the ALJ did not err.

    **b.**    **Dr. Pollack**

Plaintiff argues the ALJ did not properly reject the opinion of Dr. Pollack, an examining psychologist. (ECF No. 15 at 15-16.) Dr. Pollack examined plaintiff on September 25 and October 2,

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT -8

2009 and prepared a narrative report and completed a Mental Medical Source Statement form. (Tr. 441-50.) He diagnosed malingering, anxiety disorder and pain disorder associated with both psychological factors and general medical condition. (Tr. 446.) He assessed marked limitations in the ability to sustain an ordinary routine without special supervision and in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number of rest periods. (Tr. 448.) Otherwise, he assessed one mild limitation and no limitations in any other areas. (Tr. 447-49).

The ALJ considered Dr. Pollack's opinion of plaintiff's social functioning in establishing the RFC, but assigned little weight to Dr. Pollack's opinion regarding marked limitations in work-related mental functioning. (Tr. 22.) The ALJ found Dr. Pollack's assessment of two marked limitations is not supported by the totality of the record. (Tr. 22.) The consistency of a medical opinion with the record as a whole is a relevant factor in evaluating a medical opinion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007); *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). Plaintiff asserts this reasoning is a "boilerplate statement" and "is not specific enough to reject Dr. Pollack's opinion," citing *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988). (ECF No. 15 at 15-16.)

The ALJ in *Embrey* generally rejected the opinions of total disability in the record and cited generally all of the evidence in the record. *Id.* Here, the ALJ rejected a specific portion of Dr. Pollack's opinion, two marked limitations marked by checks on a form without explanation. Individual medical opinions are preferred over check-box reports. *See Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996); *Murray v. Heckler*, 722 F.2d 499, 501 (9th Cir. 1983). The RFC takes into account comments in Dr. Pollack's narrative, such as "lacking adequate social skills," "anxious, tense and nervous" and "passive and dependent in relationships" by limiting plaintiff to superficial contact with coworkers and general public and restricting her from working in crowds or with large groups of people, and by prohibiting intense interaction with others. (Tr. 17, 446.) Further, the ALJ cited specific evidence inconsistent with Dr. Pollack's opinion (Tr. 20-21), such as the opinions of Dr. Islam-Zwart, an examining psychologist (Tr. 358-63), Dr. Martin, the medical expert (Tr. 51-62), and Drs. Kester and Beaty, reviewing

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT -9

psychologists.[1] (Tr. 364-65,433.) Dr. Martin testified Dr. Pollack's assessment of a GAF of 60 is inconsistent with the marked limitations assessed and the marked limitations are inconsistent with the diagnoses in the report. (Tr. 58-59.) The court concludes the ALJ's discussion of the evidence is sufficiently specific in this instance and the ALJ's reasoning is supported by substantial evidence.

Although not identified by the ALJ as a "reason" for rejecting Dr. Pollack's opinion, plaintiff also argues the ALJ improperly considered that Dr. Pollack's evaluation "was arranged by the claimant's representative who has used psychologists in the past to find limitations that would preclude employment." (Tr. 22.) It does not seem particularly notable or alarming to the court that attorneys representing disability claimants seek medical or psychological evaluations in order to build a case favoring their clients. It is correct that an ALJ may not assume doctors routinely misrepresent to help their patients collect disability benefits. *Lester v. Chater*, 81 F.3d 821, 832 (9th Cir.1995) (citing *Ratto v. Sec'y*, 839 F.Supp. 1415, 1426 (D.Ore.1993). On the other hand, in certain circumstances, an ALJ is permitted to question the credibility of a doctor's report when it is solicited by counsel. *Saelee v. Chater*, 94 F.3d 520, 522–23 (9th Cir.1996). If other evidence undermines the credibility of a medical report, the purpose for which the report was obtained may be a legitimate basis for rejecting it. *Reddick v. Chater*, 157 F.3d 715 (9th Cir.1998). The fact that an examination was conducted at the request of an attorney is a relevant fact where the opinion itself provides grounds for suspicion as to its legitimacy. *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir.1996). In this case, Dr. Pollack's assessment of marked limitations are not supported by other evidence in the record or his own report which raises questions regarding the legitimacy of the report. Nonetheless, even if the ALJ erred in considering the source of the report as a "reason" for rejecting it, the ALJ cited another specific, legitimate reason supported by substantial evidence which supports the ALJ's rejection of a portion of Dr. Pollack's opinion. *See e.g., Morgan v.*

---

[1] The ALJ was not required to explicitly link all of the evidence undermining Dr. Pollack's report directly to the language rejecting the report. *See Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001). All reasons discussed by the ALJ constitute "grounds invoked by the agency," *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947), or "reasons the ALJ assert[ed]," *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003).

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT -10

*Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999). As a result, there is no error.

**3.     RFC and Hypothetical**

Plaintiff argues the hypothetical to the vocational expert did not take into account all of the mental limitations set forth by the medical expert, Dr. Martin. (ECF No. 15 at 14.) Dr. Martin testified plaintiff can perform a lot of activities of daily living and has moderate limitations in social functioning. (Tr. 20, 57.) Dr. Martin indicated plaintiff has issues being around people but was not sure her symptoms rise to the level of social phobia. (Tr. 20, 57.) Dr. Martin pointed out plaintiff can be around people in some situations. (Tr. 20, 58.)Dr. Martin also testified plaintiff has moderate limitations including: the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; the ability to work in coordination with or proximity to others without being distracted by them; the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; the ability to interact appropriately with the general public; the ability to accept instructions and respond appropriately to criticism from supervisors; and the ability to respond appropriately to changes in the work setting.² (Tr. 60-61; *see also* Tr. 447-49.)

Plaintiff argues the ALJ gave weight to Dr. Martin's testimony but did not include all of the limitations identified by Dr. Martin in the hypothetical to the vocational expert. (ECF No. 15 at 14.) Plaintiff's counsel included the limitations cited by Dr. Martin in a hypothetical to the vocational expert and the vocational expert opined that a hypothetical individual with those limitations could not work. (Tr. 80-81.) Plaintiff therefore argues the ALJ should be reversed and plaintiff is disabled. (ECF No. 15 at 15.)

---

²The medical expert referenced numbers presumably corresponding to limitations on a Mental Medical Source Statement form, although the form is not mentioned in Dr. Martin's testimony and the limitations are not specifically identified. (Tr. 60-61.) Dr. Martin listed moderate limitations on numbers seven, nine, 11, 12, 14 and 17. (Tr. 60-61.) However, plaintiff's counsel read limitations "given by Dr. Marion Martin" into the record in the form of a hypothetical to the vocational expert. (Tr. 80.) The limitations mentioned by plaintiff's counsel correspond to the numbers cited by Dr. Martin and limitations on the Mental Medical Source Statement form.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT -11

At the hearing, the ALJ asked the vocational how the term "moderate" is defined in assessing the impact of moderate limitations. (Tr. 81.) The vocational expert testified, "It just depends on the Judge. It depends on the difficulty. . . . But I believe, you know, we have many moderates that compound each other." (Tr. 81.) The ALJ then stated, "Her [Dr. Martin's] definition is the work is still satisfactory. She has these limitations but the work is still satisfactory. . . . Now she didn't give the definition in testimony here but I have to take that from numerous times in which she has given that definition." (Tr. 81-82.) The ALJ asked the vocational expert if her testimony would change if the definition of moderate changed. (Tr. 82.) The vocational expert stated, "Well, again, I still stand by my compounding effects, Your Honor. . . . But those other ones I believe taken in conjunction with each other would eliminate work." (Tr. 82.) The ALJ then discussed the limitations identified by Dr. Martin, insisting a number of limitations overlap or are included in the hypothetical. Then the ALJ re-defined "moderate" again, stating "the work is satisfactory . . . that would include enough to keep the job as far and seven and 11 are concerned." (Tr. 84.) The vocational expert then stated, "Well, those are the two I might have the most concern about the moderate, and if [] your definition is that it's – there are concerns [but] it's still satisfactorily performed, then I would say those jobs could be performed." (Tr. 84.)

The ALJ's decision does not mention Dr. Martin's testimony that plaintiff has a number of "moderate" psychological limitations or any issue with regard to the definition of "moderate." It is noted that in other contexts, it has been held that an ALJ should not base his opinion of medical evidence on past activity not in the record. *See Reed v. Massanari*, 270 F.3d 838, 843-44 (9th Cir. 2001) (holding it was improper for the ALJ to reject opinions of doctors based on past decisions that were not in the record). It was improper for the ALJ in this case to take judicial notice of Dr. Martin's definition of "moderate" in other cases. Further, the transcript reflects the ALJ continued to modify the definition of "moderate" until the vocational expert finally testified that plaintiff could work. Defining a "moderate" limitation as a limitation in which "the work is satisfactory . . . enough to keep the job" is more vocational analysis than definition of a term. The ALJ's consideration and re-definition of the term "moderate" was without basis in the record and constitutes error.

Additionally, the ALJ introduced an ambiguity in Dr. Martin's testimony by raising the issue of the definition of the term moderate. The ALJ should have further developed the record with Dr. Martin

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT -12

to clarify whether, Dr. Martin had a certain definition of the term "moderate" in mind when testifying about plaintiff's moderate limitations. The ALJ has a special duty to develop the record fully and fairly and to ensure that the claimant's interests are considered, even when the claimant is represented by counsel. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001); *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir.1983). An ALJ's duty to develop the record further is triggered when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001). The ALJ would not have needed to take judicial notice of the expert's testimony in prior cases if the record had been adequately developed in this case.

The ALJ's hypothetical must be based on medical assumptions supported by substantial evidence in the record which reflect all of a claimant's limitations. *Osenbrook v. Apfel*, 240 F.3D 1157, 1165 (9th Cir. 2001). The hypothetical should be "accurate, detailed, and supported by the medical record." *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999). It is not clear that the hypothetical posed to the vocational expert and relied upon by the ALJ is supported by the medical record in this case. The ALJ introduced an ambiguity into the record and should have followed up with the medical expert to ensure the proper definition of "moderate" was considered by the vocational expert. Furthermore, it is not clear that the RFC includes all of the limitations supported by the medical expert's testimony. Because of the ambiguity in the record, the proper remedy is remand.

**CONCLUSION**

The ALJ's decision is not supported by substantial evidence and free of legal error. On remand, the ALJ should clarify the medical expert's use of the term "moderate" and modify the RFC as is appropriate. The ALJ should take additional testimony from the medical and vocational experts as is appropriate.

Accordingly,

**IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment **(Ct. Rec. 14)** is **GRANTED**. The matter is remanded to the Commissioner for additional proceedings pursuant to sentence four 42 U.S.C. 405(g).

2. Defendant's Motion for Summary Judgment **(Ct. Rec. 17 )** is **DENIED**.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT -13

1    3.    An application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide a copy to counsel for plaintiff and defendant. Judgment shall be entered for plaintiff and the file shall be **CLOSED**.

DATED November 7, 2012

S/ JAMES P. HUTTON
UNITED STATES MAGISTRATE JUDGE

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT -14